FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

SEP 19 2006

JAMES N. HATTEN, CLERK
By: ᴍ̄ᴏ̄ᴛ̄ᴀ̄ᴜ̄ᴄ̄ᴋ̄
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IRVIN BENNETT,

        Plaintiff,

v.

CSX TRANSPORTATION, INC.,

        Defendant.

CIVIL ACTION NO.

1:05-CV-839-JEC

## ORDER & OPINION

This case is presently before the Court on Plaintiff's Motion to Compel Defendant to Fully Respond to Discovery [31]; Defendant's Motion to Strike [43]; Defendant's Motion to Extend Discovery [46]; Defendant's Motion to Compel Plaintiff to Fully Respond to Discovery [48]; Plaintiff's Motion for Extension of Discovery as to Experts [57]; Plaintiff's Motion to Determine the Sufficiency of the Defendant's Responses to Requests for Admissions [58]; Defendant's Motion to Compel Plaintiff to Fully Respond to Discovery [64]; Plaintiff's Motion for Leave to File Sur-Reply to Defendant's Motion to Strike [71]; Defendant's Motion to Exclude Plaintiff's Expert Witness Michael D. Shinnick [73]; Plaintiff's Request for Hearing [82]; Plaintiff's Motion to Compel Completion of Deposition of CSX's Retained Expert and the Deposition of its Newly-Disclosed Expert and

Motion for Emergency Hearing [83]; Motion for Protective Order [84]; AND Motion for Leave to File Sur-Reply to Defendant's Motion to Exclude Plaintiff's Expert [87].

The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that Plaintiff's Motion to Compel Defendant to Fully Respond to Discovery [31] should be **GRANTED**; Defendant's Motion to Strike [43] should be **DENIED**; Defendant's Motion to Extend Discovery [46] should be **GRANTED**; Defendant's Motion to Compel Plaintiff to Fully Respond to Discovery [48] should be **GRANTED**; Plaintiff's Motion for Extension of Discovery as to Experts [57] should be **GRANTED**; Plaintiff's Motion to Determine the Sufficiency of the Defendant's Responses to Requests for Admissions [58] should be **GRANTED**; Defendant's Motion to Compel Plaintiff to Fully Respond to Discovery [64] should be **GRANTED in part and DENIED in part**; Plaintiff's Motion for Leave to File Sur-Reply to Defendant's Motion to Strike [71] should be **GRANTED**; Defendant's Motion to Exclude Plaintiff's Expert Witness Michael D. Shinnick [73] should be **DENIED**; Plaintiff's Request for Hearing [82] should be **DENIED**; Plaintiff's Motion to Compel Completion of Deposition of CSX's Retained Expert and the Deposition of its Newly-Disclosed Expert and Motion for Emergency Hearing [83] should be **GRANTED in part and DENIED in part**; Motion for Protective Order [84]

2

should be **DENIED**; AND Motion for Leave to File Sur-Reply to Defendant's Motion to Exclude Plaintiff's Expert [87] should be **GRANTED**.

## BACKGROUND

Plaintiff in this action, Irvin Bennett, filed this lawsuit under the Federal Employers Liability Act ("FELA"), seeking damages for a back injury plaintiff says he sustained on October 16, 2003. Defendant in this action, CSX Transportation Inc. ("CSX" or "CSXT"), is a common carrier by railroad. (Shinnick Report at 1 ("Shinnick Report"), attach. as Ex. 2 to Trimble Dep.) Plaintiff has been an employee of defendant since July 26, 1976, working first as an Assistant Signalman and then as a Signal Maintainer. (*Id.* at 2.)

On the date of the alleged injury, plaintiff was working as part of a crew charged with upgrading one of defendant's signal systems, located at milepost 437.4 between Green Pond and Yemassee, South Carolina. (*Id.*) Plaintiff says he was injured when he lifted a tray of batteries from a concrete box located on the ground. (Trimble Report at 1 ("Trimble Report"), attach. as Ex. 1 to Trimble Dep.) There were two trays of batteries in the concrete box that plaintiff needed to move in order to gain access to the terminal test clips located below. (*Id.* at 1-2.) As part of the signal system upgrade, plaintiff needed to gain access to the terminal test clips in order to disconnect the old signal battery box. (Shinnick Report at 2.)

3

Plaintiff reports that he first felt a pain in his lower back after he moved the second of the two trays. (*Id.*)   The trays plaintiff lifted contained either two or four batteries.   The nickel cadmium batteries used by defendant weighed approximately sixteen pounds each, and the tray itself weighed approximately four pounds. (*Id.* at 3-4.)

The incident in question occurred on a Thursday.   Plaintiff completed his shift, but on Friday was unable to work and stayed in his motel room.   Plaintiff attempted to work on Saturday, but ultimately went home early. Though defendant asked plaintiff and his crew to do so, plaintiff was unable to work on Sunday.   Plaintiff did, however, return to work with assistance from his coworkers until the second week in December.   Plaintiff then took vacation leave until January 16, 2004, when he underwent L4-5 diskectomy back surgery.   Plaintiff has been unable to return to work since his surgery. (*Id.*)

## DISCUSSION

### I.   Standard on Discovery

Under the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . .For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.   Relevant information need not be

4

admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence . . ." FED. R. CIV. P. 26(b). In determining what information is relevant to this action, the Court is mindful that under FELA plaintiff must show that his injury resulted, "in whole or in part from the negligence of any of the officers, agents, or employees" of defendant as a common carrier railroad. 45 U.S.C. § 51 (2006). To establish negligence under FELA, plaintiff must show that defendant either "'knew, or by the exercise of due care should have known,' that prevalent standards of conduct were inadequate to protect petitioner and similarly situated employees." *See Urie v. Thompson*, 337 U.S. 163, 178 (1949).

## II.   Motions for Additional Time to Complete Discovery [46]

In Defendant's Motion to Extend Discovery [46], defendant moves for an additional forty-five days of discovery from the date that Dr. Ernest Howard performs a functional capacity evaluation on the plaintiff. Defendant needs this additional time to obtain the records associated with this evaluation, to take Dr. Howard's deposition, and then to identify a rebuttal expert if necessary. (Br. in Supp. of Def.'s Mot. to Extend Disc. ("Def.'s Extend Disc.") [46] at 1.) Defendant's request is necessitated by the fact that the discovery period in this case expired on November 15, 2005, but plaintiff's functional capacity evaluation to determine plaintiff's capability to work was not scheduled until sometime in December of

5

2005. (*Id.* at 2.)   Evidently, plaintiff's functional capacity evaluation could not be scheduled until three months after plaintiff's unexpected August 31, 2005, surgery. (*Id.*)

Plaintiff does not object to defendant being given an additional forty-five days to take discovery regarding Dr. Howard's treatment and evaluation of plaintiff.   However, plaintiff does object to defendant being given any opportunity to identify or retain a rebuttal expert in response to Dr. Howard. (Pl.'s Resp. to Def.'s Mot. to Extend Disc. ("Resp. Def.'s Extend Disc.") [62] at 1.) Drawing a distinction between FED. R. CIV. P. 26(a)(2) sub-parts (A), (B), and (C), plaintiff contends that defendant is not entitled to identify or retain a rebuttal expert to Dr. Howard because Dr. Howard is one of plaintiff's treating physicians, not a retained expert. (*Id.*) Plaintiff cites no authority beyond Rule 26 to support his position that defendant is not entitled to retain a rebuttal expert to Dr. Howard's expert testimony because of Dr. Howard's position as one of plaintiff's treating physicians.

As the parties are well aware, the federal rules do not support trial by ambush.   Moreover, the Court does not read FED. R. CIV. P. 26 as prohibiting defendant from naming a rebuttal expert to refute expert testimony, even if that expert testimony comes from a witness who can also offer testimony as a treating physician.   Indeed, the Court's own research has shown that, in previous cases, this Court

6

has implicitly acknowledged that a defendant is entitled to refute the expert testimony of a treating physician with its own expert. *See Chakales v. Hertz Corp.*, 152 F.R.D. 240, 242 (N.D. Ga. 1993)(Carnes, J.). Thus, to the extent such time is still needed, the Court **GRANTS** Defendant's Motion to Extend Discovery [46] for a period of **sixty (60) days**[1] in order to depose Dr. Howard. Additionally, any additional rebuttal experts should be named, and their depositions taken,[2] within this same time period.

Again, to the extent such time is still needed, the same unexpected August 2005 surgery on plaintiff's back also warrants the additional **sixty (60) days** of discovery that the plaintiff requests for plaintiff and defendant to depose one another's economic, ergonomic, and vocational rehabilitation experts. Accordingly, the Court **GRANTS** Plaintiff's Motion for Extension of Discovery as to Experts [57].

---

[1]  Because forty-five days may be inadequate to conduct discovery of Dr. Howard and of defendant's own expert, the Court has *sua sponte* allowed for a lengthier time period.

[2]  Should the plaintiff need a brief additional period of time to take the deposition of any rebuttal expert, the Court would entertain that request.

7

## III. Motion for Leave to File Sur-Reply to Defendant's Motion to Strike [71]

Plaintiff's Motion for Leave to File Sur-Reply to Defendant's Motion to Strike [71] is a motion by plaintiff to file a sur-reply to "address defendant's misstatement regarding the timeliness of Plaintiff's Response and unfounded accusations of delay." Defendant concedes in Defendant CSX Transportation Inc.'s Correction to its Reply to Plaintiff's Response to Defendant's Motion to Strike [70], filed the same day as plaintiff's motion but, apparently, docketed earlier, that it "mistakenly reported that plaintiff's response was tardy." Accordingly, it has been well established that the response at issue was timely. The Court therefore **GRANTS** Plaintiff's Motion for Leave to File Sur-Reply to Defendant's Motion to Strike [71].

## IV. Motion to Exclude Plaintiff's Expert Michael Shinnick, Ph.D. [73]

Defendant contends that Dr. Shinnick, the ergonomics expert proffered by plaintiff, is not qualified to render expert opinions in this case, and that his opinions are not sufficiently reliable to meet the standards of admissibility set forth in Rule 702 of the Federal Rules of Evidence and by the United States Supreme Court in *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993). (Mem. in Supp. of Def.'s Mot. to Exclude Pl.'s Expert Witness, etc. ("Mot. Exclude Shinnick") [73] at 1.) More specifically, defendant challenges three opinions set forth in Dr. Shinnick's expert report.

(Resp. to Def. Mot. to Exclude Pl.'s Expert, etc. ("Resp. Exclude Shinnick") [78] at 2-3.) First, Dr. Shinnick's conclusion related to CSX's compliance with a lifting index guideline established by the National Institute for Occupational Safety and Health ("NIOSH"). (Id.) Second, Dr. Shinnick's conclusion related to CSX's compliance with a lifting analysis known as the University of Michigan's 3D Static Strength Prediction Program ("3DSSPP"). (Id.) Third, Dr. Shinnick's conclusion that, because the battery tray plaintiff was called upon to lift exceeded the limits set by NIOSH and 3DSSPP and because CSX did not do an ergonomic analysis of the task, CSX was negligent and failed to provide plaintiff with a reasonably safe work assignment. (Id.)

In *Daubert,* the Supreme Court concluded that Rule 702 of the Federal Rules of Evidence governs the admissibility of scientific expert testimony. *Daubert,* 509 U.S. at 588. Rule 702 provides that, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." FED.R.EVID. 702. In order to determine the admissibility of expert testimony under Rule 702, trial courts are to engage in a "rigorous three-party inquiry." *U.S. v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). This inquiry demands

that the Court consider "whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Id.*

The *Daubert* Court emphasized the district court's "gatekeeping" role in ensuring that scientific testimony is relevant and reliable before it is admitted as evidence. *Daubert,* 509 U.S. at 589. *See also Hudgens v. Bell Helicopters/Textron,* 328 F.3d 1329, 1342 (11th Cir. 2003) (noting "the repeated emphasis the Supreme Court has placed upon the district court's 'gatekeeping' role in the determination of whether expert evidence should be admitted"). This gatekeeping obligation applies "not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137 (1999). The "overarching" goal of *Daubert's* gatekeeping requirement is to insure that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. This gatekeeping function, "inherently requires the trial court to conduct an exacting analysis of the *foundations* of expert opinions to ensure

10

they meet the standards for admissibility under Rule 702." *Frazier*, 387 F.3d at 1260 (internal citation omitted)(emphasis in original).

The proponent of expert testimony bears the burden of demonstrating that the expert "is qualified to render an expert opinion, that the opinion is reliable, and that the opinion would assist the trier of fact in resolving a disputed issue of material fact." *McDowell v. Brown,* 392 F.3d 1283, 1298 (11th Cir. 2004). *See also, McClain v. Metabolife Int'l, Inc.,* 401 F.3d 1233, 1238 (11th Cir. 2005) (recognizing that "[t]he burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion") (citing *Frazier,* 387 F.3d at 1260).

As discussed below, having reviewed the arguments of both parties, the Court concludes that plaintiff has met his burden of showing that Shinnick is qualified, that his opinions are reliable, and that they will assist the trier of fact.

## A. Qualifications

"[E]xperts may be qualified in various ways. While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status. In fact, the plain language of Rule 702 makes this clear: expert status may be based on 'knowledge, skill, experience, training or education.'" *Frazier,* 387 F.3d at 1260-61 (emphasis omitted). The Eleventh Circuit, relying on the Committee Notes to the 2000

11

Amendments of Rule 702, has indicated that, "if the witness is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id.* at 1261 (citing FED.R.EVID. 702 advisory committee's note (2000 amends.)) (emphasis added in original).

Here, none of Dr. Shinnick's three degrees qualify him to offer the kind of ergonomics testimony he attempts to offer in this case. As defendant points out, and plaintiff concedes, Dr. Shinnick's undergraduate degree is in hotel management and finance; Dr. Shinnick's master's degree is in rehabilitation counseling and psychology; and Dr. Shinnick's doctorate degree is from Auburn University's College of Education. (Mot. Exclude Shinnick at 11.) Nevertheless, as established by his affidavit and deposition testimony, Dr. Shinnick has taken significant course work in the field of ergonomics, has extensive work experience in ergonomics, and has published in the field. (*See* Resp. Exclude Shinnick at 9.)

More specifically, while serving on the faculty of Auburn University, and pursuant to an agreement between the deans of the colleges of engineering and education, Dr. Shinnick audited sixteen

12

courses in human factors, work measurement, and ergonomics.[3] (Aff. of Michael Shinnick, attach. as Ex. E to Resp. Exclude Shinnick ("Shinnick Aff.") [78] at ¶ 4.)   Dr. Shinnick's ergonomic work experience has included: (1) work training rehabilitation management professionals in the application of industrial engineering, human factors, and ergonomic principles which encompass the field of biomechanics; (2) work as an associate professor researching and teaching ergonomics, human factors, work measurement, rehabilitation, and work injury management; (3) a two-month fellowship to study ergonomics, human factors, and rehabilitation in Australia and New Zealand; (4) publication of at least two articles in the field of work assessment and ergonomics in peer reviewed journals; (5) a director position with a private entity performing ergonomic analyses of work tasks as a consultant and trainer in industrial engineering, work measurement, human factors, and ergonomics; and (6) development of proprietary software designed to evaluate the safety of work tasks with an ergonomic and biomechanical perspective. (*Id.* at ¶¶ 4-8, 18-19.)

The Court concludes that the above experience is sufficient to permit Dr. Shinnick to set out his first two conclusions concerning the NIOSH and 3DSSPP guidelines.   Based on his personal experience,

---

[3]   Evidently, the field of ergonomics was once referred to as "human factors." (*See* Resp. Exclude Shinnick at 10.)

13

Dr. Shinnick is qualified to evaluate and offer an expert opinion as to the stress that was placed on plaintiff's back when he lifted the battery trays out of the battery box. At the same time, however, the Court concludes that Dr. Shinnick's experience does not provide a sufficient basis for Dr. Shinnick's third conclusion: that CSX was negligent and failed to provide plaintiff with a reasonably safe work assignment.[4] Dr. Shinnick also concludes that CSX was negligent based on his opinion that the lift CSX asked plaintiff to perform improperly exceeded the limits set by NIOSH and 3DSSPP and the fact that CSX did not do an ergonomic analysis of the task. Whether the lift improperly exceeded NIOSH or 3DSSPP limits is an issue disputed by defendant's expert. In the end, it will be for the jury to determine whether CSX was negligent in asking plaintiff to perform the lift at issue in this case. If the jury credits Dr. Shinnick's testimony, it may well conclude that defendant was negligent, but the Court is disinclined to have the expert make that finding for the jury. The parties and Court can, however, work out the precise terminology of any questions at the time of trial.

---

[4] In this circuit, a trial court may exclude portions of testimony that lie outside an expert's competency, but still conclude that an expert is qualified to testify on other matters. *See City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 563 (11th Cir. 1998).

14

## B.   Reliability

"[T]he task of evaluating the reliability of expert testimony is uniquely entrusted to the district court under *Daubert*." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005).   Though the following is not a definitive checklist or test and the Rule 702 inquiry is a flexible one, factors which can be considered in ascertaining reliability under the second *Daubert*  prong include: "(1) whether the expert's methodology can be tested; (2) whether the expert's scientific technique has been subjected to peer review and publication; (3) whether the method has a known rate of error; (4) whether the technique is generally accepted by the scientific community." *Id.* at 1292.

Defendant's expert, Dr. John Trimble, objects to Dr. Shinnick's use and interpretation of the NIOSH lifting index on three basic grounds.   First, because the lift performed by plaintiff that is at issue in this case was made in what Dr. Trimble contends was a restricted work space.   Second, because Dr. Trimble contends the lift involved a horizontal, push or pull, at the same time a vertical lift was performed.   Third, because plaintiff was in an asymmetrical position when he performed the lift. (Dep. of John Trimble ("Trimble Dep.") [89] at 64.)   At the same time he disputes its application to the facts of this case, Dr. Trimble concedes that the NIOSH lifting equation is a valid tool used within the field of biomechanics to

15

evaluate the safety of a lift.[5] (Id. at 78.) Similarly, with regard to the 3DSSPP lifting index, Dr. Trimble concedes that it is a reliable methodology that has been subject to peer review and is used in the field of biomechanics. (Id. at 72-75, 91.) Indeed, Dr. Trimble, himself, used 3DSSPP in conducting the biomechanical analysis contained in his expert report submitted in this case. (Id. at 74.)

There is a distinct "difference between a district court's evaluation of an expert's reliability, which is required by Daubert, and an expert's believability or persuasiveness, which is reserved for the trier of fact . . . a district court may not exclude an expert because it believes one expert is more persuasive than another expert . . . Vigorous cross-examination ensures that these issues of general credibility are properly presented for consideration by the trier of fact." Rink, 400 F.3d at 1293 n.7. In other words, the identification of issues associated with the alleged misuse of a methodology that, in the abstract, is reliable should be accomplished on cross-examination—not by excluding a method as unreliable. Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1345 (11th Cir. 2003).

Here, on the evidence before it, the Court concludes that Dr.

---

[5] Evidently, the field of ergonomics can include biomechanics. (Trimble Dep. at 9.)

16

Shinnick's NIOSH and 3DSSPP calculations can be tested.   The Court also concludes that the NIOSH and 3DSSPP indices have been subjected to peer review and publication, and are generally accepted by the scientific community.   In sum, the Court concludes that the NIOSH and 3DSSPP lifting indices provide a formulaic, repeatable, sufficiently reliable method of analyzing the stress placed on the body by a particular lift.

## C.   Helpfulness

Finally, the Court must consider whether Dr. Shinnick's testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.   The central issue in this case is whether plaintiff's injury resulted "in whole or in part from the negligence of any of the officers, agents, or employees" of defendant--a common carrier by railroad. See 45 U.S.C. § 51 (2006). The Court finds that Dr. Shinnick's testimony that the battery tray lift plaintiff was asked to perform exceeded the NIOSH and 3DSSPP lifting guidelines may assist the trier of fact to understand the lift, and to determine facts at issue in this case.   Of course, defendant is free to challenge and counter any of Dr. Shinnick's conclusions by cross-examining Dr. Shinnick and offerings its own expert, Dr. Trimble.

17

### D.   Conclusion

In sum, the Court concludes that Dr. Shinnick is qualified to testify competently regarding the matters he intends to address; his methodology is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and his testimony assists the trier of fact to understand the evidence or to determine a fact in issue. For this, and all of the other reasons articulated above, the Court **DENIES** Defendant's Motion to Exclude Plaintiff's Expert Witness Michael D. Shinnick [73]. In deciding this motion the Court both reviewed, and pulled citations from, plaintiff's sur-reply to defendant's motion to exclude plaintiff's expert.   The Court considers plaintiff's filing of such a reply reasonable in light of defendant's introduction of a new affidavit in its reply. Accordingly, the Court **GRANTS** Motion for Leave to File Sur-Reply to Defendant's Motion to Exclude Plaintiff's Expert [87].   At the same time, because the Court was able to fully resolve the issue of Dr. Shinnick's exclusion on the pleadings, the Court **DENIES** Plaintiff's Request for Hearing [82].

In large part because of defendant's pending motion to exclude Dr. Shinnick, plaintiff filed a motion to compel the "completion" of the deposition of defendant's expert Dr. Trimble and the first deposition of what plaintiff refers to as defendant's "newly-

18

discovered" expert, engineer Erin Wilson. (Pl.'s Mot. to Compel Completion of Dep., etc. ("Compel Completion") [83] at 1.)    The transcript of Dr. Trimble's deposition taken on December 29, 2005, reveals a complete and uninterrupted deposition.    Accordingly, plaintiff should not have filed a motion to compel the "completion" of any deposition, but, rather, a motion for leave to re-depose Dr. Trimble under FED. R. CIV. P. 30.    Under Rule 30, in order to re-depose a deponent, "[a] party must obtain leave of court, which shall be granted to the extent consistent with the principles stated in Rule 26(b)(2), if . . . the person to be examined already has been deposed in the case." FED. R. CIV. P. 30(a)(2)(B).

Mechanics aside, plaintiff seeks leave to redepose Dr. Trimble because defendant attached to its reply in support of its Motion to Exclude Plaintiff's Expert Witness Michael D. Shinnick [73] a new affidavit from its expert, Dr. Trimble. (See Def.'s Reply Mem. in Supp. of its Mot. to Exclude Pl.'s Expert Witness Michael D. Shinnick [73] at Ex. D.)    In his reply affidavit, Dr. Trimble expresses new opinions in support of defendant's attempt to exclude Dr. Shinnick. (See id.)    Additionally, since Dr. Trimble's first deposition, plaintiff has learned that other individuals in Dr. Trimble's company may have assisted substantially in the preparation of Dr. Trimble's expert report. (See Compel Completion at 3-4.)    Given the above, the Court will permit plaintiff to reopen Dr. Trimble's deposition for

19

**two hours** of additional testimony.

With regard to plaintiff's request to depose engineer Erin Wilson who, apparently, assisted Dr. Trimble in his analysis and report on plaintiff's lift and injury, the Court concludes that, because discovery in this case has already been opened up for an additional sixty days, plaintiff should be permitted to take the deposition of Erin Wilson within **sixty (60) days** from the date of this Order. *See* discussion *supra* at 7.

Consistent with the above, the Court **GRANTS in part and DENIES in part** Plaintiff's Motion to Compel Completion of Deposition of CSX's Retained Expert and the Deposition of its Newly-Disclosed Expert and Motion for Emergency Hearing [83]. The Court denies in part because no hearing will be held on plaintiff's motion, as was requested. Defendant's pending motion for protective order seeks an order precluding the second deposition of Dr. Trimble and any deposition of engineer Erin Wilson. As stated above, the Court has concluded that Erin Wilson may be deposed for the first time in this case and Dr. Trimble may be re-deposed. Accordingly, the Court **DENIES** defendant's Motion for Protective Order [84].

**V.     Remaining Miscellaneous Motions**

Having decided all of the above, the Court is still left with a number of motions which indicate the parties inability to conduct

20

discovery without involving the Court in their disputes. As to these, the Court concludes the following.

## A.   Plaintiff's Motion to Compel Defendant to Fully Respond to Discovery [31]

### 1.   Interrogatory No. 19

Interrogatory No. 19 asks: "Have any of the defendant's employees been injured on the job, at any time since January 1, 2000, while working with a battery box, a battery box lid, or with the batteries in the battery box? If so, identify the person, the injury suffered, the date the injury was suffered, and state whether the person is still an employee of Defendant."

Defendant objects to Interrogatory No. 19 as unduly burdensome, overly broad, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. Defendant also contends that No. 19 asks for confidential medical information relating to non-parties to this action. Defendant further contends that this request encompasses materials that are protected from disclosure pursuant to the attorney-client privilege and the work-product doctrine. Finally, citing *State Farm v. Campbell*, 538 U.S. 408 (2003), defendant objects to plaintiff's request on the grounds plaintiff failed to provide a geographic limitation for his request and seeks documents for an unreasonably long time period. (Pl.'s Mot. to Compel Def. to Fully Respond Disc. ("Def. Fully Respond") [31] at 5.)

21

"Under well-settled law, the party resisting production bears the responsibility of establishing undue burden." *Coker v. Duke & Co., Inc.*, 177 F.R.D. 682, 686 (M.D. Ala. 1998). As to No. 19, the Court concludes that defendant has not met its burden of establishing undue burden. This Court further concludes that this interrogatory is relevant in establishing whether defendant knew prevalent standards of conduct were inadequate to protect plaintiff and similarly situated employees. *State Farm* does not preclude the kind of discovery sought in this case, but, instead, sets out the boundaries of a just award of punitive damages.

Defendant has indicated that it has two print-outs that list information on incidents that occurred while working with, or in close proximity to, batteries, battery box lids, and battery boxes. (*Id.*) It is not an undue burden for defendant to disclose the information requested by plaintiff.[6]

## 2.    Interrogatory No. 21

Interrogatory No. 21 asks: "Identify the person or persons who made the decision to begin removing, and replacing with a different type of battery housing, the battery boxes of the type that Plaintiff was injured working with, and state when that decision was made."

_____

[6]  To the extent that any of this information would compromise the medical privacy of other employees, the parties can enter into a confidentiality agreement.

Defendant originally objected to No. 21 on the grounds that the request is not relevant and not reasonably calculated to lead to the discovery of admissible evidence. (Def. Fully Respond at 8.) In its supplemental responses, defendant responded to Interrogatory No. 21 by indicating that, "[t]he Chief Engineer with input from others recommended the change." Of course, defendant cannot produce information that it does not have in its possession. However, if defendant knows, or can ascertain, the name of the "Chief Engineer" or "others" who gave the "Chief Engineer" input then, because this information goes to defendant's knowledge of the risk presented by the battery housing that plaintiff was asked to deal with, defendant is ordered to provide plaintiff with these names.

### 3.    Interrogatory No. 22

Interrogatory No. 22 asks: "State whether CSXT has any documents (either prepared by CSXT or outside consultant(s)) that contain an analysis or discussion of the cost to CSXT of the injuries that CSXT's employees have sustained working with a battery box, a battery box lid, or with the batteries in the battery box."

Defendant objects to Interrogatory No. 22 as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Defendant also contends that No. 22 asks for information protected by the attorney-client privilege and work product doctrine. Finally, citing *State Farm v. Campbell*, 538 U.S. 408 (2003),

23

defendant objects to plaintiff's request on the grounds plaintiff failed to provide a geographic limitation for his request and seeks documents for an unreasonably long time period. (Def. Fully Respond at 9.)

This information is relevant in determining whether defendant knew, or by the exercise of due care should have known, that prevalent standards of conduct were inadequate to protect plaintiff and similarly situated employees. However, defendant has indicated in its response to plaintiff's motion to compel that it has no documents that are responsive to this interrogatory. If circumstances have changed and defendant has since found documents responsive to Interrogatory No. 22, then defendant is ordered to either respond to the interrogatory or submit a privilege log.[7]

### 4.    Request for Production No. 35

Request for Production No. 35 seeks: "All PI-1A reports (or other incidental reports) that report injuries that occurred at any time since January 1, 2000, that resulted from employees working with a battery box, a battery box lid, or with the batteries in the

---

[7]    "A privilege log must identify each document withheld pursuant to a claim of privilege or protection by date, author, recipients (including recipients of copies), specific privilege or protection claimed and describe the subject matter of each document in sufficient detail to permit opposing counsel and the Court to assess the applicability of the claimed privilege or protection." *Kimbrough v. City of Cocoa*, 2006 WL 1540256, *2 n.4 (M.D. Fla. May 31, 2006).

24

battery box." (*Id.* at 11.)  This request for production is the cousin to Interrogatory No. 19.

As was the case for Interrogatory No. 19, defendant is ordered to fully respond to Request for Production No. 35.  The fact that defendant's PI-1A reports are not kept in a single central location does not establish the kind of undue burden that would excuse defendant from responding to No. 35. (*See* Def.'s Br. in Resp. to Pl.'s Mot. to Compel ("Resp. Fully Respond") [39] at 9.)

### 5.   Request for Production No. 44

Request for Production No. 44 seeks: "The minutes and records of any meeting of Defendant's safety committee and all 'safety items' or similar reports kept or submitted in the ordinary course of Defendant's business for five (5) years prior to the Incident pertaining to injuries to Defendant's employees that occurred as a result of employees working with a battery box, a battery box lid, or with the batteries in the battery box."  Defendant objects to this request for production on the grounds that it is vague, unduly burdensome, overly broad, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. (*Id.*)

Defendant adopts the same objections and response that it made in opposing Interrogatory No. 19.  As the Court overruled that objection, it likewise overrules defendant's objection as to Request for Production No. 44.

25

### 6.   Request for Production No. 61

Request for Production No. 61 seeks: "All documents identified in response to Plaintiffs Interrogatory No. 22." For the same reasons the Court ordered defendant to respond to Interrogatory No. 22, defendant is hereby ordered to produce any and all such documents, if documents responsive to Interrogatory No. 22 exist, or, alternatively, to submit a privilege log.

### 7.   Remaining Miscellaneous Interrogatory and Request for Production

In addition to the above that defendant has refused to respond to, plaintiff raises additional objections to defendant's treatment of the following.

#### a.   Interrogatory No. 5

Interrogatory No. 5 asks: "Has the Defendant conducted surveillance on Plaintiff? If so, state the date and form of each instance of surveillance, and state the names, addresses, and telephone numbers of the person conducting the surveillance." Defendant originally objected to responding to the above on the basis of the work product doctrine and attorney-client privilege. (Def. Fully Respond at 14.) However, defendant did reveal that a case investigator with Coastal Investigations attempted surveillance of plaintiff on December 31, 2004. (Id.) In its motion to compel defendant to fully respond to discovery, plaintiff asserts that

26

defendant's response to Interrogatory No. 5 is insufficient. (Id. at 15.)

In response to plaintiff's motion to compel defendant to fully respond to discovery, defendant now states that plaintiff's motion on Interrogatory No. 5 is moot because this information was already produced "pursuant to a court order from the Southern District where Coastal Investigations, the surveillance company, is located." (Resp. Fully Respond at 11.)   Plaintiff maintains that the issue of Interrogatory No. 5 is not moot because defendant has an ongoing duty to supplement this information. The Court agrees, and concludes that defendant will be required to supplement this information two weeks prior to the pretrial conference in this case.

### b.   Request for Production No. 10

Request for Production No. 10 seeks: "All surveillance documents, reports, videos and correspondence relating to surveillance of this Plaintiff, including, but not limited to, all memoranda (whether written or typed), photographs, videotapes and recordings of surveillance of the Plaintiff performed by or on the behalf of defendant."   As was the case for Interrogatory No. 5, defendant originally objected to responding to the above, on the basis of the work product doctrine and attorney-client privilege. Also, as was the case for Interrogatory No. 5, as to Request for Production No. 10, defendant now states that plaintiff's motion on

27

Interrogatory No. 5 is moot because this information was already produced "pursuant to a court order from the Southern District where Coastal Investigations, the surveillance company, is located." (Resp. Fully Respond at 11.) Again, plaintiff maintains that the issue of Request for Production No. 10 is not moot because defendant has an ongoing duty to supplement its production. The Court agrees, and concludes that plaintiff is entitled to know all of the surveillance that has been conducted. Accordingly, to the extent new material responsive to Request for Production No. 10 exists and has not been produced, the Court directs defendant to produce this material two weeks prior to the pretrial conference in this case.

### 8.   Materials Requiring Generation of Privilege Log

Plaintiff contends that defendant has failed to identify or produce documents pertaining to the incident at issue in this case and defendant's investigation thereof. (See Resp. Fully Respond at 13.) Defendant responds that it had no notice of plaintiff's injury and conducted no investigation into said injury until after plaintiff filed suit, and, accordingly, that any such investigation would be protected by the work product doctrine and attorney-client privilege. (Id.) In reply, plaintiff insists that defendant's position that all documents generated after plaintiff filed his complaint are protected by the work product doctrine is incorrect as a matter of law, and that, instead, the work product doctrine protect only documents and

23

tangible things prepared by an attorney or his client in anticipation of litigation. (Reply in Supp. of Pl.'s Mot. to Compel Def. to Fully Respond to Disc. ("Reply Fully Respond") [51] at 10-11.)  The above debate impacts Interrogatory No. 8,[8] Request for Production No. 23,[9] Request for Production No. 24,[10] Request for Production No. 27,[11] and Request for Production No. 33.[12]

---

[3]  Interrogatory No. 8 asks: "Was an investigation or investigations of the Incident conducted?  If so, describe the manner in which each investigation was performed, identify the person(s) conducting each investigation, state when each investigation occurred, describe the findings and conclusion of each investigation, and identify all documents that refer or relate to each investigation. (The term investigation is used broadly and includes but is not limited to a 'root cause analysis,' 'key factors analysis' or other similar investigation, regardless of the label that the Defendant currently uses to refer to such investigation.)

[9]  Request for Production No. 23 seeks: "All documents evidencing or relating to any investigation of the Incident."

[10]  Request for Production No. 24 seeks: "All documents that refer to any investigation of the Incident.  This includes, but is not limited to, documents that describe the manner in which an investigation was performed and documents that contain the findings and conclusions that resulted from an investigation."

[11]  Request for Production No. 27 seeks: "All drawings, sketches, graphs, charts, maps, diagrams, schematics, blueprints, photographs, digital photographs, negatives, video recordings, DVDs, writing, or other documents or materials pertaining to the Incident, including but not limited to media resulting from any tests or reenactments, including documentation of dates or any photographs or media so recorded."

[12]  Request for Production No. 33 seeks: "All documents containing communications regarding the Incident to or from any of the individuals that CSXT identified in response to Interrogatory Nos. 1 or 2."

Because, as plaintiff argues, some of the documents withheld by defendant may have been created in anticipation of litigation while other routine reports or other documents created as a matter of defendant's regular business practice may not have been created in anticipation of litigation, the Court agrees with plaintiff that, as to each of the above, defendant must either respond or, alternatively, submit a privilege log that separately and specifically addresses each interrogatory/request for production.

### 9.    Conclusion

As to all of the above, the Court **GRANTS** Plaintiff's Motion to Compel Defendant to Fully Respond to Discovery [31]. In doing so the Court notes that although plaintiff originally objected to defendant's treatment of Request for Production No. 29,[13] plaintiff has made no reply to defendant's response that defendant's objection is supported by 49 U.S.C. § 20903, which states: "[n]o part of an accident or incident report filed by a railroad carrier under section 20901 of this title . . . may be used in a civil action for damages resulting from a matter mentioned in the report." (Def. Fully Respond at 13.)  Given plaintiff's lack of reply, the Court assumes plaintiff agrees with defendant's response and accompanying refusal to produce

---

[13]    Request for Production No. 29 seeks: "All report(s) involving the Incident that were prepared for, submitted to or filed with any state or federal governmental body or agency."

30

documents responsive to Request for Production No. 29. (See Reply Fully Respond.)

Finally, with regard to plaintiff's motion on Request for Production No. 38[14] and Request for Production No. 39,[15] defendant's response is that it has already responded to these requests for production.   Again, plaintiff has not replied to defendant's response, and the Court assumes that defendant has made an adequate response to Request for Production No. 38 and Request for Production No. 39.

## B.   Defendant's Motion to Strike [43]

Defendant requests that this Court strike three witnesses-- Dr. Francis Rushing, Dr. Michael Shinnick, and Dr. Benson Hecker-- identified by plaintiff as witnesses that plaintiff may call as experts at trial. (Br. in Supp. of Def.'s Mot. to Strike ("Def.'s Strike") [43] at 1.)  As grounds for its request, defendant asserts that plaintiff failed to include a written report from each of these three witnesses with its Rule 26 disclosures.   In the alternative,

---------------------------

[14]  Request for Production No. 38 seeks: "All documents written or mailed by any of Defendant's employees, agents, or retained consultants that relate to Plaintiff's medical status or vocational rehabilitation."

[15]    Request for Production No. 39 seeks: "All documents received by any of Defendant's employees, agents or retained consultants that relate to Plaintiff's medical status or vocational rehabilitation."

AO 72A
(Rev.8/82)

defendant asks the Court to allow defendant thirty days from the date of compliance with FED. R. CIV. P. 26(a)(2) to depose plaintiff's experts and properly identify rebuttal witnesses. (Id.)

Plaintiff does not oppose defendant's request for additional time to depose plaintiff's experts, but objects to defendant's motion to strike on the grounds that plaintiff's delay in providing it's expert reports is attributable to plaintiff's unexpected August 31, 2005 surgery and to what plaintiff contends was defendant's delay in permitting plaintiff's ergonomic expert to inspect a battery box. (Pl.'s Resp. to Def.'s Mot. to Strike ("Resp. Strike") [60] at 1.) Based on other motions filed in this case, the Court understands that, since the date defendant filed its motion to strike, defendant has been provided with a copy of Dr. Shinnick's expert report and Dr. Shinnick has been deposed. According to plaintiff's response dated November 17, 2005, Dr. Rushing's expert report has also been produced, and the parties have agreed to a date to depose Dr. Rushing. (Id. at 3.) The Court is not sure whether or not this deposition has occurred. Also in his response, plaintiff states that Dr. Hecker's expert report was provided to defendant on November 14, 2005. (Id. at 5.) The Court does not know whether or not Dr. Hecker's deposition has been taken. Defendant indicates in its reply that, as of November 23, 2005, plaintiff had not made Dr. Hecker available for his deposition. (Def. CSX Transportation, Inc.'s Reply

32

to Pl.'s Resp. to Def.'s Mot. to Strike ("Reply Strike") [66] at 3.)

As the Court has already extended discovery in this case for a period of **sixty (60) days** from the date of this Order, it will not strike or otherwise exclude the testimony of plaintiff's three expert witnesses. However, the Court cautions plaintiff and its counsel to insure, well before the expiration of this period of extended discovery, that plaintiff is in complete compliance with FED. R. CIV. P. 26(a)(2) and its disclosure requirements and that all of plaintiff's experts have been made available for their depositions. As the Court has decided not to strike or otherwise exclude the testimony of plaintiff's three expert witnesses, the Court **DENIES** Defendant's Motion to Strike [43].

## C.  Defendant's Motion to Compel Plaintiff to Fully Respond to Discovery [48]

Defendant asks the Court to compel plaintiff to respond to one interrogatory request and one request for production.

### 1.  Interrogatory No. 10

Plaintiff contends that Interrogatory No. 10 is too broad in scope and in time. (Resp. to Def.'s Mot. to Compel ("Resp. Compel") [63] at 4-5.)  Interrogatory No. 10 asks: "If you have brought any other claim regardless of whether the claim resulted in formal legal action, please state the date on which the incident occurred, the nature of the incident, the names of any other parties involved and

33

the names of any attorneys or insurance companies involved." (Br. in Supp. of Def.'s Mot. to Compel Pl. to Fully Respond to Disc. ("Compel") [48] at 3-4.) Defendant's position is that Interrogatory No. 10 seeks relevant information in that it may show that plaintiff suffers from a pre-existing injury. (Id. at 4.)

Information of a pre-existing injury is relevant. However, Interrogatory No. 10 seeks information about all claims asserted by plaintiff, not just those claim related to injuries sustained by plaintiff. Accordingly, plaintiff is ordered to respond to Interrogatory No. 10, but only as to any claims that may have been asserted by plaintiff either for or in relation to any bodily injury that plaintiff may have sustained. Plaintiff's request to limit Interrogatory No. 10 to a period of ten years prior to the date of plaintiff's response is unfounded, and will not be sustained. An injury that occurred more than ten years ago may still bear on plaintiff's claim that he was injured while moving batteries within one of defendant's battery boxes.

### 2.   Request for Production No. 6

Request for Production No. 6 states: "Please produce a complete copy of the file of any expert who may testify at trial including but not limited to any correspondence, memoranda, notes, measurements, billing records, diagnostic testing, reports and other writings along with a copy of a current curriculum vitae or resume on each expert."

Originally, plaintiff objected to this request for production on the grounds that the responsive documents were protected by the work product doctrine. (Compel. at 5.)  Apparently, plaintiff has since withdrawn this objection. (Resp. Compel at 5.)  Accordingly, to the extent plaintiff has not already done so, plaintiff is ordered to produce any and all documents which are responsive to defendant's Request for Production No. 6.

### 3.  Conclusion

Subject to the above modification to Interrogatory No. 10, the Court **GRANTS** Defendant's Motion to Compel Plaintiff to Fully Respond to Discovery [48].

### D.  Plaintiff's Motion to Determine the Sufficiency of the Defendant's Responses to Requests for Admissions [58]

Defendant has refused to respond to three of plaintiff's requests for admission on the grounds that these requests seek admissions of the truth of matters beyond the scope of permissible discovery, are irrelevant, and are not reasonably calculated to lead to the discovery of admissible evidence. (Pl.'s Br. in Supp. of Mot. to Determine the Sufficiency of the Def.'s Resps. to Reqs. for Admis. ("Reqs. for Admis.") [58] at 3.)  Defendant also objects to these three requests on the ground that they seek information regarding matters subsequent to the accident at issue in this case.  Defendant contends that these requests are intended merely for the purpose of

35

harassing, oppressing, embarrassing, and annoying defendant.

Plaintiff's requests for admission ask defendant to admit or deny the following.  First, "[i]n either 2004 or 2005, a complaint was filed with the FRA alleging that CSXT harassed or intimidated signal department employees in order to discourage employees from reporting on the job injuries." (*Id.*)  Second, "[i]n either 2004 or 2005, the FRA began an investigation into whether CSXT harassed or intimidated signal department employees in order to discourage employees from reporting on the job injuries." (*Id.*)  Third, "[b]eginning in either 2004 or 2005, the FRA undertook investigation INH-2004-CSX-003028 to determine whether CSXT had violated 49 C.F.R., Part 225.33, by harassing or intimidating signal department employees in order to discourage employees from reporting on the job injuries." (*Id.*)

Because defendant contends as part of its defense that plaintiff's account of how he was injured is not to be believed-- because plaintiff did not report the injury--the inquiries made in the three requests for admission delineated above are relevant.  The Court hereby orders defendant to serve amended answers that respond to plaintiff's requests for admission Nos. 1 through 3.  That the defendant admits that an investigation occurred does not mean that this  Court  would  admit  evidence  of  an  investigation.    An investigation is not proof of that which is being investigated.  The

36

Court, thus, **GRANTS** Plaintiff's Motion to Determine the Sufficiency of the Defendant's Responses to Requests for Admissions [59].

### E.  **Defendant's Motion to Compel Plaintiff to Fully Respond to Discovery [64]**

Defendant asks the Court to compel plaintiff to answer defendant's first and second interrogatories. (Br. in Supp. of Def.'s Mot. to Compel Pl. to Fully Respond to Disc. ("Respond Disc.") [64] at 1.) Defendant's first interrogatory states: "Please identify by name, address and telephone number each and every person with knowledge of FRA Investigation 1NH-2004-CSX-003029." (*Id.* at 4.) Plaintiff has refused to respond to this interrogatory on the ground that it is unduly burdensome in that plaintiff is only aware of individuals identified in public records that are equally available to defendant. (*Id.*) For the same reason, plaintiff has also refused to respond to defendant's second interrogatory. Interrogatory No. 2 states: "Please identify by name, address and telephone number each and every person with knowledge of an investigation conducted by the Federal Railroad Administration of the Florence Division of CSXT Signal Department in the year 2002, 2003, 2004 and/or 2005." (*Id.*)

While discovery of public records is normally not required, now that the Court has decided that the Federal Railroad Administration ("FRA") investigation of defendant is relevant, see *supra* at 36-37, there is no reason for plaintiff not to respond to the above

37

interrogatories.  Plaintiff is ordered to do so immediately.    In contrast, defendant's Request for Production No. 1 asks plaintiff to: "Produce a copy of FRA Investigation INH-2004-CSX-003028." (*Id.* at 6.)  Defendant should seek this information from the Federal Railroad Administration itself, rather than from plaintiff.  Defendant has made no showing that defendant is somehow unable to obtain these documents the same way plaintiff did by requesting a copy of the investigation from the FRA.  The same can be said for defendant's Request for Production No. 2, which asks plaintiff to: "Produce a copy of each and every FRA investigation of CSXT's Signal Department." (*Id.*)

Accordingly, the Court **GRANTS in part and DENIES in part** Defendant's Motion to Compel Plaintiff to Fully Respond to Discovery [64].  The Court orders plaintiff to respond to Interrogatory No. 1 and Interrogatory No. 2.  Plaintiff's objections to Request for Production No. 1 and Request for Production No. 2 are sustained.

## CONCLUSION

For the foregoing reasons, the Court Plaintiff's Motion to Compel Defendant to Fully Respond to Discovery [31] should be **GRANTED;** Defendant's Motion to Strike [43] should be **DENIED;** Defendant's Motion to Extend Discovery [46] should be **GRANTED;** Defendant's Motion to Compel Plaintiff to Fully Respond to Discovery [48] should be **GRANTED;** Plaintiff's Motion for Extension of Discovery

as to Experts [57] should be **GRANTED;** Plaintiff's Motion to Determine
the Sufficiency of the Defendant's Responses to Requests for
Admissions [58] should be **GRANTED;** Defendant's Motion to Compel
Plaintiff to Fully Respond to Discovery [64] should be **GRANTED in
part and DENIED in part;** Plaintiff's Motion for Leave to File Sur-
Reply to Defendant's Motion to Strike [71] should be **GRANTED;**
Defendant's Motion to Exclude Plaintiff's Expert Witness Michael D.
Shinnick [73] should be **DENIED;** Plaintiff's Request for Hearing [82]
should be **DENIED;** Plaintiff's Motion to Compel Completion of
Deposition of CSX's Retained Expert and the Deposition of its Newly-
Disclosed Expert and Motion for Emergency Hearing [83] should be
**GRANTED in part and DENIED in part;** Motion for Protective Order [84]
should be **DENIED;** AND Motion for Leave to File Sur-Reply to
Defendant's Motion to Exclude Plaintiff's Expert [87] should be
**GRANTED.**

As explained *supra* at 7, discovery shall be reopened on October
2, 2006 for a **sixty (60) day** period of time.  As the Court has
granted, in part, both parties' Motion to Compel (*supra* at 21-31 and
33-38), the parties shall disclose the requested information by
**FRIDAY, September 29, 2006,** absent an agreement for a different
deadline for disclosure or a different deadline set out in the order.
See, e.g., *supra* at 26-27.

39

SO ORDERED, this __19__ day of September, 2006.

_____
JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

40

AO 72A
(Rev.8/82)